**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

MIRANDA MCLEAN,

Plaintiff,

-against-

SKYNET MEDIA LLC, JONATHAN GABEL, and JO ELLEN GABEL,

Defendants.

---------------------------------------------------------------X

Case No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff Miranda McLean ("Plaintiff" or "McLean"), by and through her attorneys Nisar Law Group, P.C., complains of Defendants Skynet Media LLC ("Skynet Media" or the "Company"), Jonathan Gabel ("Gabel"), and Jo Ellen Gabel (collectively, "Defendants") as follows:

## NATURE OF THE CASE

1. Plaintiff Miranda McLean worked for Defendants Skynet Media LLC, Jonathan Gabel, and Jo Ellen Gabel for nearly twenty years, from approximately 2006 until her constructive discharge on October 4, 2025.

2. Defendants gave Plaintiff the titles "business partner," "COO," and "VP of Operations and Marketing," but none of the authority that goes with them. Her actual work was payroll, onboarding, HR paperwork, staff scheduling, vendor coordination, and event operations. Defendants nonetheless treated her as exempt, paid her a flat weekly salary of $1,200.00, required her to work 50 to 55 hours per week and more during event seasons, and never paid her overtime, in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and the New York Labor Law §§ 190 *et seq.* and 650 *et seq.* ("NYLL").

3. Defendants also subjected Plaintiff to discrimination, harassment, and retaliation in violation of 42 U.S.C. § 1981 ("Section 1981"); Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); the New York State Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.* ("NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 *et seq.* ("NYCHRL"). Defendants further discriminated against Plaintiff because of her disability, her pregnancy-related conditions, and her familial and caregiver status, and failed to accommodate her need to express breast milk after childbirth, in violation of the NYSHRL and the NYCHRL. Defendants also retaliated against Plaintiff for objecting to their misclassification of employees as independent contractors and to their unlawful meal-break practices, in violation of the FLSA, 29 U.S.C. § 215(a)(3), and NYLL § 215.

4. For years, Defendant Jonathan Gabel made racist remarks about Black people and graphic sexual comments in the workplace. Plaintiff, who is African American, complained to Defendant Jo Ellen Gabel on at least three occasions, but nothing was done. When Plaintiff became pregnant in 2023, Gabel called her crazy for going through with the pregnancy, increased her workload, and ordered her back to work the Monday after she gave birth. In 2024, while Plaintiff was on medical leave for postpartum complications, and weeks after she told the Gabels that treating employees as independent contractors was unlawful, Gabel began recruiting her replacement, a position he called "Miranda 2.0." Defendants' hostility toward Plaintiff escalated through 2025 until she had no choice but to resign.

5. Plaintiff seeks unpaid overtime wages, liquidated and statutory damages, back pay, front pay, compensatory and punitive damages, pre- and post-judgment interest, attorneys' fees, and costs.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 1343, 29 U.S.C. § 216(b), and 42 U.S.C. § 2000e-5(f)(3).

7. This Court has supplemental jurisdiction over Plaintiff's NYLL, NYSHRL, and NYCHRL claims under 28 U.S.C. § 1367(a) because they form part of the same case or controversy as her federal claims.

8. This Court has personal jurisdiction over Defendants under N.Y. C.P.L.R. §§ 301 and 302(a)(1) because Skynet Media maintains its offices in New York, New York, and each Defendant transacts business in New York and employed Plaintiff here.

9. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims occurred here, at Defendants' offices at 519 8th Avenue, Room 809, New York, New York 10018, where Plaintiff worked.

## ADMINISTRATIVE EXHAUSTION OF TITLE VII CLAIMS

10. On or about July 30, 2026, Plaintiff filed a Charge of Discrimination against Skynet Media with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge No. 520-2026-07656, alleging discrimination and retaliation based on race, sex, and pregnancy.

11. On August 13, 2026, the EEOC issued Plaintiff a Notice of Right to Sue, which she received on or about that date.

12. Plaintiff has filed this action within ninety days of receiving the Notice of Right to Sue. 42 U.S.C. § 2000e-5(f)(1).

## THE PARTIES

13. Plaintiff Miranda McLean is an African American woman who resides in New York. At all relevant times, she was Defendants' "employee" within the meaning of the FLSA, NYLL, Title VII, NYSHRL, and NYCHRL.

14. Upon information and belief, Defendant Skynet Media is a Florida limited liability company with offices at 519 8th Avenue, Room 809, New York, New York 10018. Skynet Media operates an event marketing and entertainment business under the trade name "Joonbug" and related brands, including Joonbug.com, HalloweenParties.com, and BarCrawls.com, and produces events in New York, Washington, D.C., and Baltimore, Maryland.

15. Upon information and belief, Defendant Gabel resides in Cresskill, New Jersey, and is the Chief Executive Officer and an owner of Skynet Media. Gabel supervised Plaintiff directly, set her pay and hours, made all hiring and firing decisions, and controlled the terms and conditions of her employment.

16. Upon information and belief, Defendant Jo Ellen Gabel is an owner of Skynet Media. She had authority over the Company's personnel and payroll policies and practices, received Plaintiff's complaints about Gabel, and participated in decisions about Plaintiff's working conditions.

17. At all relevant times, Defendants jointly employed Plaintiff and were her "employers" within the meaning of the FLSA, 29 U.S.C. § 203(d), and the NYLL §§ 2 and 651. Defendants are jointly and severally liable for the wage violations alleged in this Complaint.

18. Upon information and belief, at all relevant times Skynet Media had annual gross revenues of at least $500,000 and had employees, including Plaintiff, who handled goods and materials that had moved in interstate commerce, processed payments, and communicated across

state lines. Skynet Media is therefore an enterprise engaged in commerce within the meaning of 29 U.S.C. § 203(s)(1).

19. Upon information and belief, Skynet Media employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year and is an "employer" under Title VII, 42 U.S.C. § 2000e(b). Defendants are also "employers" under the NYSHRL, N.Y. Exec. Law § 292(5), and the NYCHRL, N.Y.C. Admin. Code § 8-102.

## STATEMENT OF FACTS

**Plaintiff's Duties, Hours, and Pay:**

20. Plaintiff's actual duties consisted of event marketing and operations, payroll processing, onboarding, HR paperwork, maintaining employee records, staff scheduling, vendor coordination, and general office management. Defendants also assigned Plaintiff work for the Gabels' other businesses and their personal affairs. These duties did not involve the exercise of discretion and independent judgment with respect to matters of significance.

21. Plaintiff's regular schedule was Monday through Friday, 10:00 a.m. to 7:00 p.m., with mandatory weekend coverage. During the Halloween and New Year's Eve event seasons, she routinely worked well past those hours, often staying in the office into the early morning, and traveled to work Defendants' events in Washington, D.C. and Baltimore, Maryland, from early morning until late at night.

22. Defendants also required Plaintiff to be on call and to respond to work demands on evenings and weekends. By 2024, these demands were so constant that Plaintiff opened a second phone line solely for work.

23. Defendants required Plaintiff to keep processing payroll and preparing for events while she was on paid medical leave from approximately July through August 2024.

24. Throughout her employment, Defendants paid Plaintiff a flat weekly salary of $1,200.00, regardless of how many hours she worked.

25. Although the way Defendants paid Plaintiff changed, her work did not. For example, in 2023, Defendants paid Plaintiff through one of the Gabels' other businesses, even though she continued to perform the same work for Skynet Media under Defendants' direction and control. In 2024, Defendants reclassified Plaintiff and the Company's other employees as independent contractors and paid them on a Form 1099 basis, without pay stubs and without tracking their hours or overtime, even though they continued to perform their regular duties under Defendants' direction and control. In 2025, Defendants moved Plaintiff and the other employees onto a payroll provider.

26. On or about July 19, 2024, Plaintiff told both Gabel and Jo Ellen Gabel that she believed treating her and the other employees as independent contractors was unlawful misclassification. Defendants nonetheless kept the arrangement in place for the rest of 2024 and moved employees to a payroll provider only in 2025, after other employees and prospective hires had also complained.

27. Plaintiff's titles came with no executive authority and no increase in pay. She did not manage a department, did not customarily and regularly direct the work of two or more full-time employees, and had no authority to hire, fire, or discipline employees; nor were her recommendations on those matters given particular weight. Those decisions were made by Gabel.

28. Plaintiff regularly worked approximately 50 to 55 hours per week, and more during event seasons. However, Defendants did not accurately record Plaintiff's hours.

29. Plaintiff's $1,200.00 weekly salary was intended to compensate her for a 40-hour workweek, so her regular rate was $30.00 per hour and her overtime rate was $45.00 per hour.

30. Defendants never paid Plaintiff any overtime premium.

31. Plaintiff's salary also fell below the minimum salary required for the executive and administrative exemptions under New York law. Beginning January 1, 2025, an employee in New York City could not qualify for either exemption unless paid at least $1,237.50 per week. *See* 12 N.Y.C.R.R. § 142-2.14(c)(4). Plaintiff's $1,200.00 salary did not meet that threshold.

32. Defendants never provided Plaintiff with wage statements that accurately listed her hours worked, her overtime hours, or her overtime rate of pay, as required by NYLL § 195(3).

33. Defendants' violations were willful. Defendants knew Plaintiff worked well over 40 hours per week, kept no record of those hours, and gave her executive-sounding titles without executive duties or authority. Defendants' misclassification of employees as independent contractors in 2024 was likewise deliberate: Defendants instructed Plaintiff to implement it; Plaintiff told both Gabel and Jo Ellen Gabel on or about July 19, 2024, that it was misclassification; and prospective hires whom Plaintiff was onboarding declined positions because of it. Defendants kept it in place anyway. Upon information and belief, Defendants also resolved a former employee's claim for unpaid overtime in or about July 2025 yet continued to deny Plaintiff overtime through the end of her employment.

**Racial and Sexual Harassment:**

34. Throughout Plaintiff's employment, and continuing through 2025, Gabel regularly made racist jokes and comments about Black people in front of Plaintiff and other staff. He also regularly engaged in graphic sexual conversations at work, including descriptions of explicit sexual acts and references to pornographic websites. Plaintiff, who is African American, had to endure these remarks as a condition of keeping her job. Gabel frequently held these conversations

with his office door open, and because Plaintiff's desk was directly across from his office, she and other employees could hear them.

35. Gabel's racist comments included, among others, statements that Black people do not buy tickets and that Black people are always late, stereotypical remarks associating Black people with fried chicken, and remarks assuming that any Black man who spent money or wore jewelry was a drug dealer.

36. Gabel's racist comments continued into the final weeks of Plaintiff's employment, and some were aimed at Plaintiff herself. In or about August and September 2025, Gabel asked Plaintiff to explore programming recurring or one-time events geared toward Black patrons at venues where the Company was already booking parties. In front of clients, Gabel used an innocuous name for these events. When discussing them privately with Plaintiff, however, he referred to Black men as drug dealers, at times pointing to Plaintiff's own social circle and to photos and videos she had posted, before her daughter was born, of male friends buying bottles and wearing jewelry.

37. In or about September 2025, during a focus group, Gabel told Plaintiff that she was "not the demographic," that Black people do not buy tickets, and that she was old.

38. Gabel's sexual comments included graphic descriptions of women in Dubai allegedly being paid to take part in degrading sexual acts and telling a female employee that she was too attractive and could be preyed upon by Company clients. Gabel also made inappropriate comments about LGBTQ+ individuals, which he tried to justify or minimize by pointing out that his teenage son is gay.

39. On June 23, 2025, during an inappropriate conversation about LGBTQ+ clients, Gabel asked a female employee directly whether she was uncomfortable. She blushed and said she

was not. Plaintiff, who had heard the entire conversation, challenged Gabel, telling him in words or substance: "Jon, that was a lot, and even if she felt uncomfortable, do you think she's really going to tell you?" The employee later confided in a coworker that she had in fact been very uncomfortable, and Plaintiff and that coworker exchanged text messages about the incident at the time.

40. Plaintiff complained about Gabel's racial and sexual comments to Jo Ellen Gabel, the Company's other owner, on at least three occasions: in or about September 2024, June 2025, and September 2025. Jo Ellen Gabel acknowledged Gabel's behavior, at times responding with remarks such as "Oh my God, what is wrong with him?" or calling him an idiot, but she took no corrective action. Instead, she suggested that Plaintiff raise the issue with Gabel herself.

**<u>Plaintiff's Pregnancy:</u>**

41. In or about February 2023, Plaintiff told Gabel and Jo Ellen Gabel she was pregnant. Gabel responded by questioning her decision to have the child and calling her crazy for going through with the pregnancy. Gabel's comments and conduct made clear that his concern was how becoming a mother would affect Plaintiff's availability and commitment to the Company. He then increased her workload.

42. Gabel's reaction fit a broader pattern. He subjected several other employees who experienced major life changes, such as marriage or the birth of a child, to similar scrutiny, and each of them eventually left the Company. When the Company's Senior Event Manager was about to become a father, Gabel gave him a difficult time about his availability and scrutinized his request for paternity leave. After the child was born, Gabel began micromanaging him and undermining him in front of staff and told Plaintiff and another employee that the Senior Event Manager's work had started to "slack" ever since he had his child. The Senior Event Manager later left the

Company. Gabel subjected the Company's president to similar scrutiny after he married and had a daughter, and the president resigned. And when the Company's director of operations became engaged, Gabel complained that she was focused on her wedding and no longer committed to the Company; his treatment of her deteriorated, and she separated from the Company.

43. Despite his disapproval of her pregnancy, Gabel later called Plaintiff into his office on separate occasions to complain that he had not been invited to her gender reveal or to her daughter's first birthday party, events he learned of by following employees, including Plaintiff, on social media.

44. When Plaintiff was approximately eight months pregnant, Gabel and Jo Ellen Gabel sent her to Miami for four to six weeks to help open a restaurant in the Wynwood neighborhood. During that assignment, Plaintiff stayed at Gabel's Miami condominium and traveled back and forth between Miami and New York while continuing her regular work. The restaurant never opened.

45. Plaintiff gave birth on Friday, September 22, 2023. While she was in the hospital undergoing induction, she was working to secure a liquor license for a Company event. Defendants directed her to return to work the following Monday, September 25, 2023, leaving her no meaningful time to recover from childbirth. Plaintiff received no maternity leave and resumed her full responsibilities while recovering from childbirth, breastfeeding, and caring for her newborn.

46. After returning, Plaintiff at times worked as late as midnight to 3:00 a.m. while caring for her newborn, sometimes with her daughter strapped to her chest.

47. Defendants provided no designated private lactation space and no scheduled breaks to express breast milk. Plaintiff had to step away discreetly, and at times sneak away, to pump, and she bought wearable breast pumps so she could pump while working without drawing attention to

herself. Plaintiff continued pumping at work under these conditions from her return in September 2023 into early 2024. Gabel made an inappropriate, dismissive comment about her pumping. Because of her long hours, Plaintiff at times could not breastfeed and took rideshares from Manhattan to Queens, where her mother lives, to drop off pumped milk. Defendants knew that Plaintiff was pumping at work, as Gabel's comment shows, yet no one offered her a lactation space or break time or discussed her needs with her.

48. The workload, stress, and lack of adequate opportunities to pump contributed to a decline in Plaintiff's milk supply, which caused her further emotional distress as she tried to continue breastfeeding her daughter.

**Plaintiff's Postpartum Complications, 2024 Medical Leave, and Attempted Replacement:**

49. Plaintiff experienced postpartum health problems, including hypertension, anemia and vitamin deficiencies, thyroid-related problems, and severe exhaustion and stress. As late as the months before her constructive discharge, Plaintiff was told that her deficiencies were still present. The lack of time to recover from childbirth or bond with her daughter also took a serious emotional toll on Plaintiff and her family.

50. In or about July through August 2024, Plaintiff took approved medical leave to address these postpartum conditions. The leave was not a vacation; Plaintiff needed it to recover from the physical and emotional effects of her postpartum experience. Even so, Defendants required her to keep processing payroll and handling other work during her leave.

51. Defendants knew of Plaintiff's postpartum conditions and of the reasons for her leave. Plaintiff communicated directly with both Gabel and Jo Ellen Gabel about her postpartum health problems, and she and Jo Ellen Gabel specifically discussed her thyroid-related problems. When Plaintiff needed a day off or had to leave early because she was unwell, she explained her

symptoms, including migraines, fatigue, and lack of sleep, and she told both owners that the stress and demands of the job were worsening her health. Before her July–August 2024 leave, Plaintiff told both Gabel and Jo Ellen Gabel that the leave was for postpartum health problems. During a telephone call about her leave, Gabel joked that pregnancy "will do it to you" and again questioned her decision to have a child.

52. Gabel was frustrated that he had to manage business operations during Plaintiff's leave. He blamed her for delays that occurred while she was out and made negative comments about her, both to her face and to other employees.

53. Gabel also began recruiting Plaintiff's replacement. On or about August 6, 2024, while Plaintiff was still on medical leave and less than three weeks after she told the Gabels that treating employees as independent contractors was unlawful, Gabel asked Plaintiff herself to post a job advertisement for him. The position was first advertised as "Admin/Bookkeeper" and later reposted as "Operations/Bookkeeper," and its duties substantially overlapped with the administrative, bookkeeping, payroll, and operational duties Plaintiff was already performing.

54. Others recognized the posting for what it was. A coworker sent Plaintiff the advertisement and asked whether she was leaving the Company, and other employees questioned the posting. On or about August 30, 2024, Gabel forwarded Plaintiff an email from another individual who questioned the advertisement and mentioned Plaintiff by name. Gabel claimed that the position was a backup in case Plaintiff was no longer working for the Company and that he did not want to get caught with "his pants down" again if she was unavailable, and he insisted that Plaintiff's role was different. Yet in multiple conversations with Plaintiff, and internally, Gabel referred to the position as "Miranda 2.0," and the position was saved on the Company's Google Drive under that name.

55. The recruiting did not stop when Plaintiff returned from leave. On or about September 22, 2024, after Plaintiff had returned, Defendants hired a woman into the position; they terminated her on or about October 11, 2024. Defendants required Plaintiff to train several women hired into the role, each of whom later resigned or was terminated. Gabel later offered yet another explanation, that the position was meant to reduce everyone's workload, but the position duplicated Plaintiff's own duties and continued to be filled after she returned.

**The 2024–2025 Escalation and Plaintiff's Constructive Discharge:**

56. In or about November 2024, Gabel approved an email announcing that the office would be closed for Veterans Day. After the announcement went out, Gabel became upset and blamed Plaintiff for the closure, suggesting that she had added it after he approved the email. She had not; the closure was in the email he approved. Gabel then sent employees a message stating that those who failed to report to work could be dismissed. Plaintiff did not report to work that day because the office was scheduled to be closed.

57. Around the same time, Jo Ellen Gabel accidentally sent Plaintiff a text message intended for Gabel, asking whether he had spoken to Plaintiff yet and whether Plaintiff would still be handling her responsibilities or whether Jo Ellen Gabel needed to take them over. The following day, Gabel called Plaintiff into his office and reprimanded her, stating: "I also said if people weren't able to be in then there's no reason for them to be here."

58. In or about July 2025, upon information and belief, Skynet Media settled a former employee's complaint alleging unpaid overtime and sexual harassment. Defendants listed Plaintiff as the Company's "HR representative" in that matter, but in name only: she had no authority to investigate or address workplace complaints and was told only to have the employee fill out a form.

59. After the settlement, Gabel remarked that he felt comfortable continuing his inappropriate workplace conversations because the Company had obtained insurance that he believed would protect him against future employment-related claims. When Plaintiff reported this remark to Jo Ellen Gabel, she appeared shocked but brushed it off.

60. After that settlement, Gabel's treatment of Plaintiff, which had already deteriorated in 2024, worsened further. He undermined her in front of staff by reversing decisions she had already made, contradicting her instructions to employees, and criticizing her publicly; he also blamed her for business delays that occurred while she was on approved medical leave in 2024, and cut her lunch breaks or required her to work through them. On or about July 30, 2025, Gabel told Plaintiff and another employee, a Black Hispanic man, that they must eat at their desks or limit their breaks to fifteen minutes.

61. Gabel said he did not want the new staff taking hour-long breaks. Plaintiff objected that she and her coworker worked eight- to nine-hour shifts and were entitled to their breaks, and that during the October-through-December event season they sometimes forgot to eat because of the stress of the job. Gabel pushed back, insisted that they could eat at their desks, and dismissed eating out as a "habit." Plaintiff reasonably and in good faith believed that Gabel's directive violated New York's meal-period requirements under NYLL § 162.

62. Because Gabel so often contradicted or reversed her decisions, Plaintiff began directing employees to Gabel whenever they came to her with operational questions. Although she increasingly dreaded going to work, her performance did not decline; she continued to report to work, fulfill her responsibilities, and complete her assignments professionally. She did, however, withdraw from non-work conversations with Gabel, and Gabel sent her a message about her demeanor.

63. Gabel also criticized Plaintiff for leaving early to meet her childcare responsibilities and for absences to care for her sick child.

64. In or about September 2025, Plaintiff again complained to Jo Ellen Gabel about Gabel's racist and sexually inappropriate conduct. Nothing changed. Instead, the final weeks of Plaintiff's employment were the hardest yet.

65. On the weekend of September 6–7, 2025, when Plaintiff was not scheduled to work, Gabel repeatedly contacted her about shutting down advertisements. When she returned to the office on Monday, September 8, he called her into his office and lectured her for not responding outside her working hours. Afterward, Gabel remarked sarcastically in front of staff, in words or substance, that he knew not to contact Plaintiff outside of work hours, while he continued to contact her outside her scheduled hours.

66. During September 2025, Plaintiff and her daughter both had pneumonia. Even while sick, Plaintiff kept working or remained responsive, because she feared that Gabel, who was already angry that the Company was behind on its Halloween preparations, would criticize or ridicule her if she did not answer him.

67. On September 19, 2025, during a meeting with a client, Gabel took part in a discussion about LGBTQ+ individuals in which he used the slur "trannies." After the meeting, Plaintiff told Gabel that the discussion had been inappropriate.

68. Gabel also interfered with Plaintiff's meal breaks again. Knowing that Plaintiff and her coworker generally took lunch at about 2:00 p.m., Gabel began scheduling meetings at that time. On September 26, 2025, about one week before Plaintiff resigned, Gabel called Plaintiff into his office to discuss shortening their lunch breaks once again.

69. At about 7:00 a.m. on Saturday, September 27, 2025, outside Plaintiff's scheduled hours, Gabel repeatedly contacted Plaintiff because he and a client could not access an account. Plaintiff was criticized over the incident when she returned to work.

70. During September 2025, Jo Ellen Gabel also repeatedly added other staff members' unfinished work to Plaintiff's workload and required Plaintiff to act as a go-between rather than communicating with those employees herself. Plaintiff complained to Gabel about the added burden.

71. On October 2, 2025, Plaintiff was out of the office running errands to secure a permit for the Company's Baltimore events, which Gabel had told her were the priority. Gabel texted her about a telephone call she had not known she was expected to join, then called her and yelled that she was needed on the call. When Plaintiff returned to the office after completing the Baltimore errands, Gabel called her into his office about the incident.

72. That same day, Gabel required Plaintiff to sit in, essentially as a witness, on a meeting in which he reprimanded several staff members for talking with one another when they arrived at work. By then, Gabel frequently arrived at the office angry and had subjected employees to repeated lectures.

73. Throughout this period, Gabel continued to demand additional hours and weekend work without overtime pay, offering bonuses instead, and imposed an extended work schedule that was to begin on Saturday, October 4, 2025.

74. Defendants' conduct caused Plaintiff severe emotional distress, including stress, sleep disruption, dread of going to work, and strain on her home and family life, and aggravated her physical symptoms, including chronic migraines and fatigue.

75. In the early morning hours of Saturday, October 4, 2025, before the extended schedule began, Plaintiff resigned. By then, the cumulative effect of Gabel's racist and sexual remarks, his micromanagement and public undermining of Plaintiff, the repeated reprimands and one-on-one meetings in his office, the after-hours demands, the interference with her breaks, the increased workload, the criticism of her for illness and childcare, and the demand that she work still more uncompensated hours had made her working conditions so intolerable that a reasonable person in her position would have felt compelled to resign. Her resignation was a constructive discharge.

76. Jo Ellen Gabel's email acknowledging Plaintiff's resignation referred specifically to Plaintiff's prior illnesses, her absence in summer 2024, and her health and family commitments. Despite acknowledging those circumstances, Jo Ellen Gabel called Plaintiff's departure disrespectful and suggested that the Company would have accommodated her needs had she approached it differently, even though Plaintiff had already been blamed and criticized for her 2024 medical leave and targeted for replacement both during and after it.

77. As a result of Defendants' conduct, Plaintiff has lost wages and benefits and has been underemployed since her constructive discharge. In her new position, she earns approximately $800.00 per week, about $400.00 less than the $1,200.00 weekly salary Defendants paid her.

**AS AND FOR A FIRST CAUSE OF ACTION**
**VIOLATION OF THE FLSA 29 U.S.C. § 207**
**UNPAID OVERTIME WAGES**
**(Against All Defendants)**

78. Plaintiff repeats and realleges each preceding allegation as if fully set forth herein.

79. The FLSA requires employers to pay non-exempt employees one and one-half times their regular rate for all hours worked over forty in a workweek. 29 U.S.C. § 207(a)(1).

80. Plaintiff was not exempt from the FLSA's overtime requirements because her primary duties were not executive or administrative and did not involve the exercise of discretion and independent judgment with respect to matters of significance. Defendants failed to pay Plaintiff overtime for the hours she worked over forty in each workweek.

81. Defendants' violations were willful within the meaning of 29 U.S.C. § 255(a).

82. Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid overtime wages in an amount to be determined at trial, an equal amount as liquidated damages, attorneys' fees, and costs under 29 U.S.C. § 216(b).

**AS AND FOR A SECOND CAUSE OF ACTION**
**VIOLATION OF NYLL AND 12 N.Y.C.R.R. § 142 et seq.**
**UNPAID OVERTIME WAGES**
**(Against All Defendants)**

83. Plaintiff repeats and realleges each preceding allegation as if fully set forth herein.

84. The NYLL and its implementing regulations require employers to pay employees one and one-half times their regular rate for all hours worked over forty in a workweek. NYLL § 650 *et seq.*; 12 N.Y.C.R.R. § 142-2.2.

85. Plaintiff was not exempt from these requirements. Her duties did not satisfy any exemption, and in 2025 her salary was below the minimum required for the executive and administrative exemptions.

86. Defendants willfully failed to pay Plaintiff overtime for the hours she worked over forty in each workweek.

87. Plaintiff is entitled to recover from Defendants, jointly and severally, her unpaid overtime wages in an amount to be determined at trial but not less than $31,680.00, an equal amount as liquidated damages, prejudgment interest, attorneys' fees, and costs under NYLL §§ 198 and 663.

**AS AND FOR A THIRD CAUSE OF ACTION**
**VIOLATION OF NYLL § 195(3)**
**FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS**
**(Against All Defendants)**

88. Plaintiff repeats and realleges each preceding allegation as if fully set forth herein.

89. NYLL § 195(3) requires employers to give employees, with each payment of wages, a statement listing, among other things, the rate and basis of pay, the regular and overtime rates, and the number of regular and overtime hours worked.

90. Defendants never provided Plaintiff with wage statements that accurately listed her hours worked, her overtime hours, or her overtime rate.

91. Defendants' inaccurate wage statements injured Plaintiff. By omitting her hours and overtime rate, the statements concealed that she was working substantial unpaid overtime and that Defendants were not tracking her time, which prevented her from recognizing and challenging the underpayments and contributed to her loss of overtime wages.

92. Plaintiff is entitled to recover from Defendants, jointly and severally, statutory damages of $250 for each workday the violation occurred, up to $5,000, plus attorneys' fees and costs, under NYLL § 198(1-d).

**AS AND FOR A FOURTH CAUSE OF ACTION**
**SEX DISCRIMINATION IN VIOLATION OF TITLE VII**
**OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§ 2000e et seq.**
**(Against Defendant Skynet Media LLC Only)**

93. Plaintiff repeats and realleges each preceding allegation as if fully set forth herein.

94. Title VII prohibits an employer from discriminating against an employee with respect to the terms, conditions, or privileges of employment because of sex, including pregnancy, childbirth, or related medical conditions. 42 U.S.C. §§ 2000e(k), 2000e-2(a)(1).

95. Skynet Media discriminated against Plaintiff because of her sex by subjecting her to working conditions so intolerable that she was forced to resign on October 4, 2025. Those conditions included Gabel's persistent sexual comments, the escalating mistreatment described above, and the Company's failure to act on her complaints.

96. Gabel's animus toward Plaintiff because of her sex is further shown by his response to her pregnancy in 2023: calling her crazy for going through with the pregnancy, increasing her workload, and ordering her back to work days after she gave birth; it is also shown by his treatment of her after childbirth, including Defendants' failure to provide a lactation space or pumping breaks, his blaming her for delays during her postpartum medical leave, and his effort to replace her with a "Miranda 2.0".

97. As a direct and proximate result, Plaintiff has suffered lost wages and benefits, emotional distress, and other economic and non-economic damages.

98. Skynet Media acted with malice or reckless indifference to Plaintiff's federally protected rights, entitling her to punitive damages subject to the limits of 42 U.S.C. § 1981a(b)(3).

**AS AND FOR A FIFTH CAUSE OF ACTION**
**HOSTILE WORK ENVIRONMENT (RACE AND SEX)**
**IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. §§ 2000e et seq.**
**(Against Defendant Skynet Media LLC Only)**

99. Plaintiff repeats and realleges each preceding allegation as if fully set forth herein.

100. Title VII prohibits an employer from subjecting an employee to a hostile work environment because of race or sex. Harassment is actionable when it is "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986). Courts consider the totality of the circumstances, including the frequency and severity of the conduct, whether it was

physically threatening or humiliating, and whether it unreasonably interfered with the employee's work. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

101. Gabel's persistent racist remarks about Black people and graphic sexual comments, made openly in the workplace throughout Plaintiff's employment and continuing through September 2025, including racist remarks aimed at Plaintiff herself in the final weeks of her employment, were sufficiently severe or pervasive to alter the conditions of Plaintiff's employment. His statement that Plaintiff was crazy to go through with her pregnancy, the increased workload during her pregnancy, and the demand that she return to work days after giving birth were part of the same hostile environment, which escalated in 2024 and 2025 and culminated in her constructive discharge.

102. Gabel was Plaintiff's direct supervisor and Skynet Media's CEO and owner, so his conduct is imputed to Skynet Media. Plaintiff also complained to Jo Ellen Gabel, but Skynet Media did nothing to investigate or stop the harassment.

103. As a direct and proximate result, Plaintiff has suffered lost wages and benefits, emotional distress, and other economic and non-economic damages.

104. Skynet Media acted with malice or reckless indifference to Plaintiff's federally protected rights, entitling her to punitive damages subject to the limits of 42 U.S.C. § 1981a(b)(3).

**AS AND FOR A SIXTH CAUSE OF ACTION**
**RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964,**
**42 U.S.C. § 2000e-3(a)**
**(Against Defendant Skynet Media LLC Only)**

105. Plaintiff repeats and realleges each preceding allegation as if fully set forth herein.

106. Title VII prohibits an employer from retaliating against an employee because she opposed a practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). An action is retaliatory if

it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).

107. Plaintiff engaged in protected activity when she complained to Jo Ellen Gabel on at least three occasions in 2024 and 2025 about Gabel's racial and sexual harassment, and when she challenged Gabel directly about his sexual comments to a female coworker.

108. Skynet Media knew of Plaintiff's complaints, which she made to one of its owners.

109. In retaliation, Skynet Media subjected Plaintiff to materially adverse treatment, including cutting and interfering with her breaks, undermining her in front of staff, blaming her for delays that occurred during her medical leave, falsely blaming her for the November 2024 Veterans Day office closure, subjecting her to repeated reprimands and after-hours demands in September and October 2025, demanding additional uncompensated hours and weekend work, and escalating the hostility toward her until she was forced to resign on October 4, 2025.

110. Plaintiff's protected activity was a but-for cause of this treatment.

111. As a direct and proximate result, Plaintiff has suffered lost wages and benefits, emotional distress, and other economic and non-economic damages.

112. Skynet Media acted with malice or reckless indifference to Plaintiff's federally protected rights, entitling her to punitive damages subject to the limits of 42 U.S.C. § 1981a(b)(3).

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**RACIAL HOSTILE WORK ENVIRONMENT IN VIOLATION OF 42 U.S.C. § 1981**
**(Against All Defendants)**

113. Plaintiff repeats and realleges each preceding allegation as if fully set forth herein.

114. Section 1981 guarantees all persons the same right to make and enforce contracts, including the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship, as is enjoyed by white citizens. 42 U.S.C. § 1981(a)-(b). It prohibits racial harassment

in employment, and individuals who are personally involved in the violation may be held individually liable.

115. Plaintiff is African American, and her employment with Defendants was a contractual relationship within the meaning of Section 1981.

116. Gabel's persistent racist jokes and comments about Black people, made openly in the workplace throughout Plaintiff's employment and including remarks aimed at Plaintiff herself in August and September 2025, created a racially hostile work environment that was sufficiently severe or pervasive to alter the conditions of her employment.

117. Gabel personally engaged in the harassment. Jo Ellen Gabel was personally involved because she learned of the harassment through Plaintiff's complaints and, despite her authority as an owner, failed to remedy it. Skynet Media is liable for the conduct of its CEO and owners.

118. As a direct and proximate result, Plaintiff has suffered lost wages and benefits, emotional distress, and other economic and non-economic damages.

119. Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights, entitling her to punitive damages, which are not subject to the limits of 42 U.S.C. § 1981a(b)(3).

**AS AND FOR AN EIGHTH CAUSE OF ACTION**
**RETALIATION IN VIOLATION OF 42 U.S.C. § 1981**
**(Against All Defendants)**

120. Plaintiff repeats and realleges each preceding allegation as if fully set forth herein.

121. Section 1981 prohibits retaliation against a person who complains of race discrimination. *CBOCS W., Inc. v. Humphries*, 553 U.S. 442, 457 (2008).

122. Plaintiff engaged in protected activity when she complained to Jo Ellen Gabel on at least three occasions in 2024 and 2025 about Gabel's racist comments. Defendants knew of her complaints.

123. In retaliation, Defendants cut and interfered with Plaintiff's breaks, undermined her in front of staff, blamed her for delays that occurred during her medical leave, falsely blamed her for the November 2024 Veterans Day office closure, subjected her to repeated reprimands and after-hours demands in September and October 2025, demanded additional uncompensated hours and weekend work, and escalated the hostility toward her until she was forced to resign on October 4, 2025. Gabel personally carried out this retaliation, and Jo Ellen Gabel, knowing of Plaintiff's complaints, permitted it.

124. Plaintiff's protected activity was a but-for cause of this treatment.

125. As a direct and proximate result, Plaintiff has suffered lost wages and benefits, emotional distress, and other economic and non-economic damages.

126. Defendants acted with malice or reckless indifference to Plaintiff's federally protected rights, entitling her to punitive damages, which are not subject to the limits of 42 U.S.C. § 1981a(b)(3).

## AS AND FOR A NINTH CAUSE OF ACTION<br>SEX DISCRIMINATION IN VIOLATION OF THE<br>NEW YORK STATE HUMAN RIGHTS LAW<br>N.Y. Exec. Law §§ 290 *et seq.*

127. Plaintiff repeats and realleges each preceding allegation as if fully set forth herein.

128. The NYSHRL prohibits employers from discriminating against employees in the terms, conditions, or privileges of employment because of sex, including pregnancy. N.Y. Exec. Law § 296(1)(a). The NYSHRL must be construed liberally to accomplish its remedial purposes. *Id.* § 300.

129. Defendants discriminated against Plaintiff because of her sex by subjecting her to inferior terms and conditions of employment and ultimately forcing her to resign, as described above. Defendants' treatment of Plaintiff during and after her 2023 pregnancy is further evidence of their discriminatory animus.

130. As a direct and proximate result, Plaintiff has suffered lost wages and benefits, emotional distress, and other economic and non-economic damages, and is entitled to compensatory and punitive damages, attorneys' fees, and costs.

**AS AND FOR A TENTH CAUSE OF ACTION**
**GENDER DISCRIMINATION IN VIOLATION OF THE**
**NEW YORK CITY HUMAN RIGHTS LAW**
**N.Y.C. Admin. Code §§ 8-101 et seq.**

131. Plaintiff repeats and realleges each preceding allegation as if fully set forth herein.

132. The NYCHRL prohibits an employer, or its employees or agents, from discriminating against an employee because of gender, including pregnancy. N.Y.C. Admin. Code § 8-107(1)(a). The NYCHRL must be construed liberally and independently of its federal and state counterparts. *Id.* § 8-130.

133. Defendants treated Plaintiff less well than other employees because of her gender, as described above, culminating in her constructive discharge. Gabel's 2023 statement that Plaintiff was crazy to go through with her pregnancy and Defendants' refusal to give her time to recover after childbirth are further evidence of that animus.

134. As a direct and proximate result, Plaintiff has suffered lost wages and benefits, emotional distress, and other economic and non-economic damages, and is entitled to compensatory and punitive damages, attorneys' fees, and costs.

135. Defendants acted with willful or wanton negligence, recklessness, or a conscious disregard of Plaintiff's rights, entitling her to punitive damages. *Chauca v. Abraham*, 30 N.Y.3d 325, 329 (2017).

**AS AND FOR AN ELEVENTH CAUSE OF ACTION**
**HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE**
**NEW YORK STATE HUMAN RIGHTS LAW**
**N.Y. Exec. Law §§ 290 *et seq.***

136. Plaintiff repeats and realleges each preceding allegation as if fully set forth herein.

137. The NYSHRL prohibits an employer from subjecting an employee to harassment because of race or sex, including pregnancy, that subjects the employee to inferior terms, conditions, or privileges of employment. N.Y. Exec. Law § 296(1)(h). The harassment need not be severe or pervasive; it is actionable unless it amounts to no more than petty slights or trivial inconveniences. *Id.*

138. Defendants subjected Plaintiff to inferior terms, conditions, and privileges of employment because of her race and sex through Gabel's persistent racist and sexual comments, his hostility toward her pregnancy, Defendants' failure to provide a lactation space or pumping breaks, the attempt to replace her after her postpartum medical leave, and the escalating mistreatment that continued through her resignation. This conduct formed a single, continuing hostile work environment that persisted into the limitations period and was far more than petty slights or trivial inconveniences.

139. Plaintiff complained to Jo Ellen Gabel, but Defendants took no corrective action.

140. As a direct and proximate result, Plaintiff has suffered lost wages and benefits, emotional distress, and other economic and non-economic damages, and is entitled to compensatory and punitive damages, attorneys' fees, and costs.

**AS AND FOR A TWELFTH CAUSE OF ACTION**
**HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW**
**N.Y.C. Admin. Code §§ 8-101 *et seq.***

141. Plaintiff repeats and realleges each preceding allegation as if fully set forth herein.

142. The NYCHRL prohibits an employer, or its employees or agents, from treating an employee less well than other employees because of race or gender, including pregnancy. N.Y.C. Admin. Code § 8-107(1)(a). The conduct need not be severe or pervasive.

143. Defendants treated Plaintiff less well than other employees because of her race and gender through Gabel's racist and sexual comments, his hostility toward her pregnancy, Defendants' failure to provide a lactation space or pumping breaks, the attempt to replace her after her postpartum medical leave, the restriction of her breaks, the public undermining of her authority, and the escalating hostility that continued through her resignation.

144. Plaintiff complained to Jo Ellen Gabel, but Defendants took no corrective action.

145. As a direct and proximate result, Plaintiff has suffered lost wages and benefits, emotional distress, and other economic and non-economic damages, and is entitled to compensatory and punitive damages, attorneys' fees, and costs.

146. Defendants acted with willful or wanton negligence, recklessness, or a conscious disregard of Plaintiff's rights, entitling her to punitive damages. *Chauca v. Abraham*, 30 N.Y.3d 325, 329 (2017).

**AS AND FOR A THIRTEENTH CAUSE OF ACTION**
**RETALIATION IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW**
**N.Y. Exec. Law § 296(7)**

147. Plaintiff repeats and realleges each preceding allegation as if fully set forth herein.

148. The NYSHRL prohibits an employer from retaliating or discriminating against any person because she has opposed any practice forbidden by the NYSHRL. N.Y. Exec. Law § 296(7).

149. Plaintiff engaged in protected activity when she complained to Jo Ellen Gabel on at least three occasions in 2024 and 2025 about Gabel's racial and sexual harassment, and when she challenged Gabel directly about his sexual comments to a female coworker. Defendants knew of her complaints.

150. In retaliation, Defendants cut and interfered with Plaintiff's breaks, undermined her in front of staff, blamed her for delays that occurred during her medical leave, falsely blamed her for the November 2024 Veterans Day office closure, subjected her to repeated reprimands and after-hours demands in September and October 2025, demanded additional uncompensated hours and weekend work, and escalated the hostility toward her until she was forced to resign on October 4, 2025.

151. Defendants took these actions because of Plaintiff's protected activity.

152. As a direct and proximate result, Plaintiff has suffered lost wages and benefits, emotional distress, and other economic and non-economic damages, and is entitled to compensatory and punitive damages, attorneys' fees, and costs.

**AS AND FOR A FOURTEENTH CAUSE OF ACTION**
**RETALIATION IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW**
**N.Y.C. Admin. Code § 8-107(7)**

153. Plaintiff repeats and realleges each preceding allegation as if fully set forth herein.

154. The NYCHRL prohibits an employer from retaliating against an employee because she opposed any practice forbidden by the NYCHRL. N.Y.C. Admin. Code § 8-107(7). Retaliation need not result in an ultimate action or materially adverse change; it is enough that the conduct was reasonably likely to deter a person from engaging in protected activity. *Id.*

155. Plaintiff engaged in protected activity when she complained to Jo Ellen Gabel on at least three occasions in 2024 and 2025 about Gabel's racial and sexual harassment, and when

she challenged Gabel directly about his sexual comments to a female coworker. Defendants knew of her complaints.

156. In retaliation, Defendants cut and interfered with Plaintiff's breaks, undermined her in front of staff, blamed her for delays that occurred during her medical leave, falsely blamed her for the November 2024 Veterans Day office closure, subjected her to repeated reprimands and after-hours demands in September and October 2025, demanded additional uncompensated hours and weekend work, and escalated the hostility toward her until she was forced to resign on October 4, 2025. This conduct was reasonably likely to deter a person from engaging in protected activity.

157. Defendants took these actions because of Plaintiff's protected activity.

158. As a direct and proximate result, Plaintiff has suffered lost wages and benefits, emotional distress, and other economic and non-economic damages, and is entitled to compensatory and punitive damages, attorneys' fees, and costs.

159. Defendants acted with willful or wanton negligence, recklessness, or a conscious disregard of Plaintiff's rights, entitling her to punitive damages. *Chauca v. Abraham*, 30 N.Y.3d 325, 329 (2017).

**AS AND FOR A FIFTEENTH CAUSE OF ACTION**
**AIDING AND ABETTING IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW N.Y. Exec. Law § 296(6)**
**(Against Defendant Jo Ellen Gabel)**

160. Plaintiff repeats and realleges each preceding allegation as if fully set forth herein.

161. The NYSHRL makes it unlawful "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or to attempt to do so." N.Y. Exec. Law § 296(6).

162. An individual who actually participates in the conduct giving rise to a discrimination claim may be held personally liable, including a supervisor or owner who fails to

investigate or remedy harassment after learning of it. *Feingold v. New York*, 366 F.3d 138, 157-8 (2d Cir. 2004).

163. As alleged above, Skynet Media and Gabel violated the NYSHRL by subjecting Plaintiff to discrimination, a hostile work environment, and retaliation because of her race, sex, disability, pregnancy-related conditions, and familial status. Jo Ellen Gabel actually participated in those violations.

164. As an owner of Skynet Media with authority over its personnel policies and practices, she received Plaintiff's complaints about Gabel's racial and sexual harassment. She took no action to investigate or stop it, told Plaintiff to confront Gabel herself, and allowed the harassment and the retaliation that followed to continue until Plaintiff was forced to resign.

165. As a direct and proximate result, Plaintiff has suffered lost wages and benefits, emotional distress, and other economic and non-economic damages, and is entitled to compensatory and punitive damages, attorneys' fees, and costs.

**AS AND FOR A SIXTEENTH CAUSE OF ACTION**
**AIDING AND ABETTING IN VIOLATION OF THE NEW YORK CITY HUMAN RIGHTS LAW N.Y.C. Admin. Code § 8-107(6)**
**(Against Defendant Jo Ellen Gabel)**

166. Plaintiff repeats and realleges each preceding allegation as if fully set forth herein.

167. The NYCHRL makes it unlawful "for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so." N.Y.C. Admin. Code § 8-107(6).

168. The NYCHRL must be construed liberally and independently of its federal and state counterparts. *Id.* § 8-130.

169. As alleged above, Skynet Media and Gabel violated the NYCHRL by treating Plaintiff less well than other employees because of her race, gender, disability, pregnancy-related

conditions, and caregiver status and by retaliating against her for complaining about Gabel's harassment.

170. Jo Ellen Gabel aided and abetted those violations.

171. Despite her authority as an owner of Skynet Media, she ignored Plaintiff's complaints, failed to take any corrective action, directed Plaintiff to confront Gabel herself, and permitted the harassment and retaliation to continue until Plaintiff was forced to resign.

172. As a direct and proximate result, Plaintiff has suffered lost wages and benefits, emotional distress, and other economic and non-economic damages, and is entitled to compensatory damages, attorneys' fees, and costs.

173. Jo Ellen Gabel acted with willful or wanton negligence, recklessness, or a conscious disregard of Plaintiff's rights, entitling Plaintiff to punitive damages. *Chauca v. Abraham*, 30 N.Y.3d 325, 329 (2017).

**AS AND FOR A SEVENTEENTH CAUSE OF ACTION**
**RETALIATION IN VIOLATION OF NYLL § 215**
**(Against All Defendants)**

174. Plaintiff repeats and realleges each preceding allegation as if fully set forth herein.

175. NYLL § 215(1)(a) prohibits an employer, or any agent or officer of a corporation or limited liability company, from discharging, penalizing, or in any other manner discriminating or retaliating against an employee because the employee has complained to the employer that it has engaged in conduct that the employee reasonably and in good faith believes violates any provision of the Labor Law.

176. NYLL § 162 requires employers to give employees who work shifts of more than six hours extending over the noonday meal period at least thirty minutes for a meal.

177. Plaintiff engaged in protected activity on or about July 19, 2024, when she told Gabel and Jo Ellen Gabel that she believed their treatment of her and the other employees as independent contractors was unlawful misclassification, and again on or about July 30, 2025, when she objected to Gabel that his directive requiring her and a coworker to eat at their desks or limit their lunch breaks to fifteen minutes violated their right to meal breaks during their eight- to nine-hour shifts. Plaintiff reasonably and in good faith believed that the misclassification violated the Labor Law, including its wage-payment and wage-statement requirements, and that the meal-break directive violated NYLL § 162.

178. Defendants knew of Plaintiff's complaints, which she made directly to Skynet Media's owners.

179. In retaliation, Defendants penalized Plaintiff. Within weeks of her July 2024 complaint, as alleged above, Gabel began recruiting her replacement. After her July 2025 complaint, Gabel rejected and dismissed her objection, and in the weeks that followed Defendants continued to restrict her breaks, including by scheduling meetings during her lunch hour and calling her into his office on September 26, 2025, to discuss shortening her lunch break again; demanded additional uncompensated hours and weekend work; imposed an extended work schedule beginning October 4, 2025; and escalated their hostility toward her until she was forced to resign that day, barely two months after her complaint.

180. Defendants took these actions because of Plaintiff's complaints.

181. Gabel and Jo Ellen Gabel are individually liable as Plaintiff's employers and as officers and agents of Skynet Media.

182. As a direct and proximate result, Plaintiff has suffered lost compensation and other damages, and she is entitled to lost compensation, front pay in lieu of reinstatement, liquidated damages of up to $20,000.00, costs, and reasonable attorneys' fees under NYLL § 215(2)(a).

183. Plaintiff will serve notice of this action on the New York State Attorney General at or before its commencement, as required by NYLL § 215(2)(b).

**AS AND FOR AN EIGHTEENTH CAUSE OF ACTION**
**DISABILITY AND PREGNANCY-RELATED CONDITION DISCRIMINATION AND FAILURE TO ACCOMMODATE IN VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW**
**N.Y. Exec. Law §§ 296(1)(a) and 296(3)**

184. Plaintiff repeats and realleges each preceding allegation as if fully set forth herein.

185. The NYSHRL prohibits an employer from discriminating against an employee because of disability, N.Y. Exec. Law § 296(1)(a), and requires an employer to make reasonable accommodations to the known disabilities and pregnancy-related conditions of its employees, *id.* § 296(3)(a). The NYSHRL defines "disability" broadly to include any physical, mental, or medical impairment demonstrable by medically accepted clinical or laboratory diagnostic techniques and defines "pregnancy-related condition" to include medical conditions related to pregnancy or childbirth. *Id.* § 292(21), (21-f).

186. Plaintiff's postpartum hypertension, anemia and vitamin deficiencies, and thyroid-related problems are disabilities and pregnancy-related conditions within the meaning of the NYSHRL. Plaintiff's need to express breast milk after childbirth was also a pregnancy-related condition.

187. Defendants knew of these conditions. They approved Plaintiff's 2024 medical leave, Jo Ellen Gabel's email acknowledging Plaintiff's resignation referred specifically to her

prior illnesses and her absence in summer 2024, and Gabel knew that Plaintiff was pumping at work and commented on it.

188. Defendants failed to reasonably accommodate Plaintiff's need to express breast milk. They provided no private lactation space and no break time to pump, even though doing so would have imposed no undue hardship.

189. Defendants also discriminated against Plaintiff because of her disability and pregnancy-related conditions. Gabel blamed her for delays that occurred during her medical leave and disparaged her to other employees; the Company advertised for her replacement, which Gabel called "Miranda 2.0" and justified by saying he did not want to get caught "with his pants down" again if she was unavailable; and Defendants' escalating hostility culminated in her constructive discharge.

190. As a direct and proximate result, Plaintiff has suffered lost wages and benefits, emotional distress, and other economic and non-economic damages, and is entitled to compensatory and punitive damages, attorneys' fees, and costs.

## AS AND FOR A NINETEENTH CAUSE OF ACTION<br>DISABILITY AND PREGNANCY-RELATED CONDITION DISCRIMINATION,<br>FAILURE TO ACCOMMODATE, AND FAILURE TO ENGAGE<br>IN A COOPERATIVE DIALOGUE IN VIOLATION OF THE<br>NEW YORK CITY HUMAN RIGHTS LAW<br>N.Y.C. Admin. Code §§ 8-107(1)(a), (15), (22), and (28)

191. Plaintiff repeats and realleges each preceding allegation as if fully set forth herein.

192. The NYCHRL prohibits an employer, or its employees or agents, from discriminating against an employee because of disability. N.Y.C. Admin. Code § 8-107(1)(a). It defines "disability" as any physical, medical, mental, or psychological impairment. *Id.* § 8-102. It requires an employer to reasonably accommodate an employee's disability, *id.* § 8-107(15), and the needs of an employee for her pregnancy, childbirth, or related medical condition, including

lactation, where the condition is known or should have been known to the employer, *id.* § 8-107(22).

193. The NYCHRL also requires an employer to engage in a cooperative dialogue with an employee whom it has notice may require an accommodation, and an employer's failure to do so is an independent violation. *Id.* § 8-107(28). The NYCHRL must be construed liberally and independently of its federal and state counterparts. *Id.* § 8-130.

194. Plaintiff's postpartum hypertension, anemia and vitamin deficiencies, and thyroid-related problems are disabilities and medical conditions related to pregnancy and childbirth, and her need to express breast milk was a related medical condition. Defendants knew of each of these conditions, as alleged above.

195. Defendants failed to accommodate Plaintiff's need to express breast milk, providing no private lactation space and no break time to pump, and never engaged in any dialogue with her about her needs, even though they knew she was pumping at work.

196. Defendants treated Plaintiff less well than other employees because of her disability and pregnancy-related conditions by blaming and disparaging her for her medical leave, seeking to replace her with a "Miranda 2.0," and escalating their hostility toward her until her constructive discharge.

197. As a direct and proximate result, Plaintiff has suffered lost wages and benefits, emotional distress, and other economic and non-economic damages, and is entitled to compensatory damages, attorneys' fees, and costs.

198. Defendants acted with willful or wanton negligence, recklessness, or a conscious disregard of Plaintiff's rights, entitling her to punitive damages. *Chauca v. Abraham*, 30 N.Y.3d 325, 329 (2017).

**AS AND FOR A TWENTIETH CAUSE OF ACTION**
**FAMILIAL STATUS DISCRIMINATION IN VIOLATION OF THE**
**NEW YORK STATE HUMAN RIGHTS LAW**
**N.Y. Exec. Law § 296(1)(a)**

199. Plaintiff repeats and realleges each preceding allegation as if fully set forth herein.

200. The NYSHRL prohibits an employer from discriminating against an employee in the terms, conditions, or privileges of employment because of familial status, which includes being pregnant or having a child under the age of eighteen. N.Y. Exec. Law §§ 292(26), 296(1)(a).

201. Defendants discriminated against Plaintiff because of her familial status. When she became pregnant, Gabel made clear that his concern was how motherhood would affect her availability and commitment to the Company. After her daughter was born, Gabel criticized Plaintiff for leaving early to meet her childcare responsibilities and for absences to care for her sick child, and Defendants subjected her to escalating hostility until her constructive discharge. Jo Ellen Gabel's email acknowledging Plaintiff's resignation itself referred to Plaintiff's family commitments.

202. As a direct and proximate result, Plaintiff has suffered lost wages and benefits, emotional distress, and other economic and non-economic damages, and is entitled to compensatory and punitive damages, attorneys' fees, and costs.

**AS AND FOR A TWENTY-FIRST CAUSE OF ACTION**
**CAREGIVER STATUS DISCRIMINATION IN VIOLATION OF THE**
**NEW YORK CITY HUMAN RIGHTS LAW**
**N.Y.C. Admin. Code § 8-107(1)(a)**

203. Plaintiff repeats and realleges each preceding allegation as if fully set forth herein.

204. The NYCHRL prohibits an employer, or its employees or agents, from discriminating against an employee because of caregiver status. N.Y.C. Admin. Code § 8-

107(1)(a). A "caregiver" includes a person who provides direct and ongoing care for a minor child. *Id.* § 8-102.

205. Since her daughter's birth in September 2023, Plaintiff has provided direct and ongoing care for her minor child.

206. Defendants treated Plaintiff less well than other employees because of her caregiver status. Gabel criticized Plaintiff for leaving early to meet her childcare responsibilities and for absences to care for her sick child, scrutinized her for the effect of motherhood on her availability, and, together with Jo Ellen Gabel, subjected her to escalating hostility until her constructive discharge.

207. As a direct and proximate result, Plaintiff has suffered lost wages and benefits, emotional distress, and other economic and non-economic damages, and is entitled to compensatory damages, attorneys' fees, and costs.

208. Defendants acted with willful or wanton negligence, recklessness, or a conscious disregard of Plaintiff's rights, entitling her to punitive damages. *Chauca v. Abraham*, 30 N.Y.3d 325, 329 (2017).

**AS AND FOR A TWENTY-SECOND CAUSE OF ACTION**
**RETALIATION IN VIOLATION OF THE FLSA**
**29 U.S.C. § 215(a)(3)**
**(Against All Defendants)**

209. Plaintiff repeats and realleges each preceding allegation as if fully set forth herein.

210. The FLSA makes it unlawful for any person to discharge or in any other manner discriminate against an employee because the employee has filed any complaint under or related to the FLSA. 29 U.S.C. § 215(a)(3). An oral complaint, including one made to the employer, is protected if it is sufficiently clear and detailed for a reasonable employer to understand it, in light

of both content and context, as an assertion of rights protected by the statute. *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011).

211. On or about July 19, 2024, Plaintiff engaged in protected activity when she told Gabel and Jo Ellen Gabel that their treatment of her and the other employees as independent contractors was misclassification. Defendants had stopped tracking employees' hours and overtime under that arrangement, and a reasonable employer would have understood Plaintiff's complaint as an assertion of the employees' right to be treated as employees under the wage laws, including the right to overtime pay.

212. Defendants retaliated against Plaintiff because of her complaint. Less than three weeks later, while Plaintiff was on medical leave, Gabel had her post an advertisement for a position that duplicated her duties and that he called "Miranda 2.0"; Defendants continued recruiting for and filling that position after she returned; and Defendants subjected her to the escalating hostility alleged above until her constructive discharge on October 4, 2025.

213. Gabel and Jo Ellen Gabel are individually liable as Plaintiff's employers within the meaning of 29 U.S.C. § 203(d). Defendants' retaliation was willful.

214. As a direct and proximate result, Plaintiff has suffered lost wages, emotional distress, and other damages, and she is entitled to legal and equitable relief under 29 U.S.C. § 216(b), including lost wages, an equal amount as liquidated damages, compensatory damages, attorneys' fees, and costs.

## **JURY DEMAND**

215. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Miranda McLean respectfully requests that the Court enter judgment in her favor and against Defendants Skynet Media LLC, Jonathan Gabel, and Jo Ellen Gabel, jointly and severally except as otherwise specified, granting the following relief:

A. Declaring that Defendants violated the FLSA and the NYLL by failing to pay Plaintiff overtime wages, as alleged in the First and Second Causes of Action, and awarding Plaintiff her unpaid overtime wages in an amount to be determined at trial but not less than $31,680.00, plus liquidated damages;

B. Awarding Plaintiff statutory damages of up to $5,000.00 under NYLL § 198(1-d) for Defendants' failure to provide accurate wage statements, as alleged in the Third Cause of Action;

C. Declaring that Defendants violated the FLSA, 29 U.S.C. § 215(a)(3), and NYLL § 215 by retaliating against Plaintiff, as alleged in the Seventeenth and Twenty-Second Causes of Action, and awarding Plaintiff lost compensation, front pay, and liquidated damages under 29 U.S.C. § 216(b) and NYLL § 215(2)(a), including liquidated damages of up to $20,000.00 under NYLL § 215(2)(a);

D. Declaring that Defendant Skynet Media LLC violated Title VII by discriminating against Plaintiff because of her sex, subjecting her to a hostile work environment, and retaliating against her, as alleged in the Fourth, Fifth, and Sixth Causes of Action;

E. Declaring that Defendants violated Section 1981 by subjecting Plaintiff to a racially hostile work environment and retaliating against her, as alleged in the Seventh and Eighth Causes of Action;

F. Declaring that Defendants violated the NYSHRL and the NYCHRL by discriminating against Plaintiff, failing to accommodate her, subjecting her to a hostile work environment, retaliating against her, and aiding and abetting those violations, as alleged in the Ninth through Sixteenth and Eighteenth through Twenty-First Causes of Action;

G. Awarding Plaintiff back pay, front pay, and compensatory damages, including damages for emotional distress, on her discrimination, harassment, retaliation, and constructive discharge claims;

H. Awarding Plaintiff punitive damages under Section 1981, the NYSHRL, and the NYCHRL, and under Title VII subject to the limits of 42 U.S.C. § 1981a(b)(3);

I. Awarding Plaintiff pre-judgment interest and post-judgment interest at the applicable rates;

J. Awarding Plaintiff her attorneys' fees and costs in connection with all claims; and

K. Granting such other and further relief as the Court deems just and proper.

Dated: November 9, 2026

**NISAR LAW GROUP, P.C.**

*/s/ Maria J. Cedeno Cassinelli*
BY: **Maria J. Cedeno Cassinelli, Esq.**
NY Bar No. 6198592
One Grand Central Place
60 East 42nd Street, Suite 4600
New York, New York 10165
Main: (212) 600-9534
Email: maria@nisarlaw.com

*Attorneys for Plaintiff Miranda McLean*